# United States Court of Appeals for the Federal Circuit

---

**JOSEPH R. BIAFORA**
AND **STEFI BIAFORA,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5130

---

Appeals from the United States Court of Federal Claims in No. 93-CV-6552, Judge Edward J. Damich.

---
- - - - - - - - - - - - - - - - - - - - - - - - -

**DOLLY ANN LIMITED PARTNERSHIP, MID-CITY FINANCIAL CORPORATION, EUGENE F. FORD, JOHN WALSH, IRENE WALSH, HILDA ZELDON, JOHN J. MCAVOY, SAUL RITZENBERG, JOSEPH MARILLEY, JULIUS SANKIN, CLARK ENTERPRISES, INC., JANE DEBLOIS HANNAN, ESTATE OF, ISADORE RODIS CREDIT SHELTER TRUST, JANE PARISH REVOCABLE TRUST,** AND **DELIA LANG,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

————————————

2013-5134

————————————

Appeal from the United States Court of Federal Claims in No. 97-CV-5828, Judge Edward J. Damich.

————————————

- - - - - - - - - - - - - - - - - - - - - - - - - -

**THETFORD PROPERTIES IV, L.P.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

————————————

2013-5136

————————————

Appeal from the United States Court of Federal Claims in No. 93-CV-6559, Judge Edward J. Damich.

————————————

- - - - - - - - - - - - - - - - - - - - - - - - - -

**CARRIAGE HOUSE OF MUSKEGON ASSOCIATES, LP,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

————————————

2013-5139

————————————

Appeal from the United States Court of Federal Claims in No. 97-CV-5822, Judge Edward J. Damich.

---

**CARRIAGE HOUSE SOUTH ASSOCIATES, LP,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5142

---

Appeal from the United States Court of Federal Claims in No. 97-CV-5823, Judge Edward J. Damich.

---

**THETFORD PROPERTIES III, L.P.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5144

---

Appeal from the United States Court of Federal Claims in No. 93-CV-6558, Judge Edward J. Damich.

---

Decided: December 10, 2014

---

HARRY J. KELLY, Nixon Peabody, LLP, of Washington, DC, argued for plaintiffs-appellants.

DAVID A. HARRINGTON, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee.  With him on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, FRANKLIN E. WHITE, JR., Assistant Director, ELIZABETH A. SPECK and KENNETH D. WOODROW, Trial Attorney.

———————————

Before NEWMAN, MOORE, and O'MALLEY, *Circuit Judges.*

MOORE, Circuit Judge.

Appellants, owners of properties with mortgages insured by the United States Department of Housing and Urban Development (HUD), appeal from judgments of the United States Court of Federal Claims dismissing their various takings claims.  For the reasons below, we *affirm-in-part*, *reverse-in-part*, and *remand* to the Court of Federal Claims for further proceedings consistent with this opinion.

## BACKGROUND

In the 1950s and '60s, the federal government enacted legislation to encourage private developers to construct, own, and manage housing projects for low- and moderate-income families.  The government did so by insuring mortgages on the housing projects in exchange for certain provisions, such as a 40-year mortgage term, an agreement to maintain affordability restrictions on the housing for the duration of the mortgage, and prepayment limitations or prohibitions on the mortgage.  Changing this regime, Congress passed the Emergency Low Income Housing Preservation Act of 1987 (ELIHPA), which was superseded by the Low-Income Housing Preservation and

Resident Homeownership Act of 1990 (LIHPRHA) (collectively, Preservation Statutes). The Preservation Statutes, among other things, instituted a pre-approval process to request the right to prepay mortgages. There were substantive restrictions on HUD's ability to grant prepayment requests, which limited its discretion. *Cienega Gardens v. United States*, 503 F.3d 1266, 1272 n.2 (Fed. Cir. 2007) ("HUD was only permitted to approve immediate prepayment upon finding that the effect of prepayment would not 'materially increase economic hardship for current tenants,' including a finding that alternative housing was available for current tenants and that the supply of vacant, comparable housing would not be affected.") (citing 12 U.S.C. § 4108(a)). Prepaying the mortgage was one step in removing affordability restrictions on properties so that they could be rented at market prices. The Preservation Statutes permitted HUD to grant property owners incentives, such as cash distributions or changes to the regulatory agreement, rather than permission to prepay. Appellants, who each owned one or more properties with mortgages insured by the government, filed suits in the Court of Federal Claims claiming that the Preservation Statutes effected an as-applied taking of their right to prepay mortgages.

Several of the Court of Federal Claims' rulings are being appealed. First, it granted the government's motions for summary judgment that the takings claims for a subset of the properties at issue were unripe because the appellants that owned the subset of properties did not exhaust their administrative remedies. *Anaheim Gardens v. United States*, 107 Fed. Cl. 404, 422 (Fed. Cl. 2012). Second, it granted the government's motions for summary judgment that no taking occurred for a subset of properties because the mortgages of those properties did not include a right to prepay. *Anaheim Gardens v. United States*, 107 Fed. Cl. 9, 16 (Fed. Cl. 2012). Third, it granted the government's motion for summary judgment of

collateral estoppel as to all of the claims of one appellant, Thetford IV. *Anaheim Gardens v. United States*, 107 Fed. Cl. 404, 422 (Fed. Cl. 2012). This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review a determination of ripeness by the Court of Federal Claims de novo. *Maguire v. United States*, 707 F.3d 1351, 1357 (Fed. Cir. 2013). We review the Court of Federal Claim's grant of summary judgment regarding the existence of a taking de novo. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1351 (Fed. Cir. 2013). We review a trial court's application of collateral estoppel de novo. *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003).

## I. Ripeness

An as-applied regulatory takings claim does not ripen "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). A plaintiff, however, can be excused from exhausting administrative remedies when it would be futile to do so, such as when the administrative agency has no discretion to grant the requested relief or the parties agree on how the challenged regulation would apply. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 738–39 (1997). We have held that the futility exception applies where "no uncertainty remains regarding the impact of the regulation, certainty being the basis for the ripeness requirement." *Greenbrier v. United States*, 193 F.3d 1348, 1359 (Fed. Cir. 1999) (internal citations omitted).

In *Cienega Gardens v. United States*, we held that "HUD lacks discretion to grant a prepayment request" under the Preservation Statutes "unless (1) implementa-

tion of the plan will not materially increase economic hardship for current tenants; and (2) the supply of vacant, comparable housing is sufficient to ensure that prepayment will not materially affect the availability of decent, safe, and sanitary housing affordable to low-income persons in the area." 265 F.3d 1237, 1246 (Fed. Cir. 2001). Certain property owners in *Cienega Gardens* presented data showing that charging market rate rents for the properties at issue would constitute "a material increase in economic hardship for existing tenants" and "submitted uncontroverted affidavits attesting that allowing [the owners] to terminate their affordability restrictions would materially affect the supply of low-income housing in those communities." *Id.* at 1246–47. We held their claims ripe because they "set forth uncontested facts demonstrating that it would be futile for them to file prepayment requests with HUD." *Id.* at 1248. A similar ripeness/futility issue is present in this case.

The Court of Federal Claims granted the government's motions for summary judgment that the takings claims regarding Carriage House of Muskegon, Carriage House South, Dolly Ann Apartments, Long Drive Apartments #1, Franklin Court Apartments, Holiday Town Apartments, Washington Street Apartments, Hardee Street Apartments, and Person Court Apartments (Ripeness Properties) were not ripe.[1] The court found that the claims were not ripe because the owners of these properties, Carriage House of Muskegon, Carriage House South, Dolly Ann, Thetford III, and Thetford IV (Ripeness Appellants), failed to exhaust the administrative remedies under the Preservation Statutes. It also found that the

---

[1] Appellant Thetford IV does not appeal the Court of Federal Claims' decision as to Calico Court Apartments.

futility exception, which can excuse administrative exhaustion, was not applicable.

The Ripeness Appellants admit that they did not receive a final decision from HUD regarding permission to prepay the mortgages of the Ripeness Properties. They argue, however, they should be excused from their failure to exhaust administrative remedies because they proved that HUD would not have permitted prepayment under the Preservation Statutes. First, a representative of each Ripeness Appellant testified that, based on his or her experience in the industry and discussions with industry advisors, he or she believed HUD would not have approved a request to prepay the mortgages of the Ripeness Properties. Second, an expert, David A. Smith, opined that HUD could not have approved a request to prepay the mortgages of the Ripeness Properties. Specifically, he opined that HUD would not have evaluated alternative relief available under the Preservation Statutes, such as cash distributions or changes to the regulatory agreement, until after it concluded that a property could not meet the requirements to prepay under the Preservation Statutes because processing such requests was expensive. He also opined that the existence of certain HUD documentation indicated that HUD had proceeded to processing the properties and that this processing was indicative of a HUD decision that the properties were not eligible to prepay. On that basis, he opined that the Ripeness Properties would be ineligible for prepayment and that such requests were futile.

These two pieces of evidence do not create a genuine dispute of material fact sufficient to deny the government's motions for summary judgment. We agree with the Court of Federal Claims that the Ripeness Appellants provided an insufficient basis for their opinions that HUD would not have permitted prepayment for the specific properties at issue. The testimony of the company representatives amounted to little more than an assertion that

their advisors told them it would be pointless to request prepayment. There was insufficient foundation to support their opinions. Such testimony does not create a dispute of material fact. Mr. Smith's opinion regarding the Ripeness Properties is similarly unfounded. Mr. Smith provided insufficient foundation for his opinion that because HUD started the process, it had decided that the Ripeness Properties were prepayment ineligible. Mr. Smith never worked for HUD and was not involved in processing applications for prepayment or other relief under the Preservation Statutes such that he would be able to testify as to normal internal HUD processes. There is no evidence that establishes, for instance, that HUD begins processing only after it determines ineligibility for prepayment. Mr. Smith's claim that HUD would not have begun to process the properties unless it determined that they were not eligible for prepayment is too speculative to create a dispute of fact over futility. The Ripeness Appellants failed to exhaust their administrative remedies before bringing suit and did not present evidence which raised a genuine dispute of material fact regarding futility. Thus, we affirm the Court of Federal Claims' determination that the claims for these properties were not ripe.

## II. Right to Prepay

In evaluating a takings claim, the court must first determine "whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking." *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1329 (Fed. Cir. 2012). The Court of Federal Claims granted the government's motions for summary judgment that no right was taken regarding Millwood Apartments, Parthenia Manor Apartments, Dolly Ann Apartments, Stewarts Creek Apartments #1, Holiday Town Apartments, and Market North II Apartments (Prepayment Properties). It concluded that enactment of the Preservation Statutes could not

have taken a right to prepay from appellants Biafora, Dolly Ann, Thetford III, and Thetford IV (Prepayment Appellants) because the mortgage notes for the Prepayment Properties do not include a right to prepay.

The Prepayment Appellants admit that the mortgage notes "stated that the note[s] could not be prepaid for the 40 year term of the mortgage." Br. of Appellant in No. 2013-5136 at 37; Br. of Appellant in No. 2013-5134 at 23; Br. of Appellant in 2013-5130 at 13; Br. of Appellant in No. 2013-5144 at 25. Nonetheless, the Prepayment Appellants argue that before the Preservation Statutes, HUD would have, by practice, allowed the Prepayment Appellants to prepay the mortgages of, and remove the affordability restrictions on, the Prepayment Properties. In support, they provide legal opinions and letters from HUD stating that HUD's regulations would supersede any contrary language in a mortgage note.

We hold that no contractual right to prepay existed for the Prepayment Properties. The Prepayment Appellants admit that the contracts expressly stated that they could not be prepaid. Even if HUD had a regulation that nonetheless allowed prepayment, such regulation would not create a contractual right. The Prepayment Appellants admit that no takings claim would exist where a right bestowed by regulation is subsequently withdrawn. Oral Argument at 29:59–31:03, *available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2013-5130.mp3*. "No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit." *New York Cent. R. Co. v. White*, 243 U.S. 188, 198 (1917); *see also Branch v. United States*, 69 F.3d 1571, 1577–78 (Fed. Cir. 1998). Even if we construed HUD's practice or regulations favorably to the Prepayment Appellants, it would not convert a regulatory benefit into a contractual right. Thus, because we hold that no contractual right existed where the mortgages clearly prohibited prepayment, we affirm the Court of

Federal Claims' determination that with regard to the Prepayment Properties, enactment or implementation of the Preservation Statutes did not take a contract-based property right to prepay the mortgages without HUD approval.

## III.  Collateral Estoppel

Collateral estoppel is generally appropriate if "(1) an issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action."  *Shell Petroleum*, 319 F.3d at 1338.  The Court of Federal Claims dismissed all of Thetford IV's takings claims after granting the government's motion for summary judgment that Thetford IV was barred from bringing suit based on collateral estoppel because it filed and lost an earlier suit regarding ELIHPA in the United States District Court for the Eastern District of North Carolina (North Carolina action).  On the basis of collateral estoppel alone, the court dismissed Southgate Apartments, Jefferson Court Apartments, Glendale Court Apartments, Market North Apartments #1, Chowan Court Apartments, Columbus Court Apartments, and Peachtree Court Apartments.

We hold that the Court of Federal Claims erred in dismissing Thetford IV's suit under collateral estoppel. Collateral estoppel is only appropriate if the issue in the current litigation is identical to the issue decided in the North Carolina action.  We conclude that they are not. The North Carolina action involved a facial due process challenge to ELIHPA.  Thetford IV's argument in the North Carolina action was that Congress had no right to condition prepayment. *Thetford Props. IV Ltd. P'ship v. U.S. Dep't. of Hous. & Urban Dev.*, 907 F.2d 445, 449 (4th Cir. 1990).  Thetford IV's futility argument in that case

was that it should be excused from failing to exhaust administrative remedies with regard to its due process challenge because HUD is not able to review the constitutionality of the relevant statute (ELIHPA). *Id.* at 447–49. The court did not decide, nor did Thetford IV argue, that it was futile for Thetford IV to request prepayment for specific properties based on the limitations on HUD's discretion to allow prepayment. *Cf. id.* at 449–450.

In the present action, Thetford IV asserts that the Preservation Statutes, as applied, constitute a taking, a distinct and separate cause of action from the due process challenge in the North Carolina action. Thetford IV now claims that it owns a group of properties for which it had a right to prepay (these mortgages expressly allowed prepayment after 20 years). The Preservation Statutes purportedly took that contractual property right. In response to the government's defense that Thetford IV's case should be dismissed because it failed to exhaust its administrative remedies through HUD, Thetford IV argues that the record establishes that HUD did not have discretion to permit prepayment of these properties. It would thus have been futile to receive a final decision from HUD prior to filing suit. Thetford IV introduced evidence that for these properties, HUD would not have been permitted to allow prepayment. These are not identical issues. Thus, we reverse the Court of Federal Claims' determination that Thetford IV was collaterally estopped from bringing its claims in this case and reverse the dismissal of Southgate Apartments, Jefferson Court Apartments, Glendale Court Apartments, Market North Apartments #1, Chowan Court Apartments, Columbus Court Apartments, and Peachtree Court Apartments.

IV. Alternative Bases to Uphold Dismissal

On appeal, the government presents two alternative bases to affirm dismissal of the remaining properties (Southgate Apartments, Jefferson Court Apartments,

Glendale Court Apartments, Market North Apartments #1, Chowan Court Apartments, Columbus Court Apartments, and Peachtree Court Apartments). Thetford IV argues that these alternative arguments by the government are not properly before the court because they were not raised in a cross-appeal. We do not agree. "[A]n appellee can present in this court all arguments supported by the record and advanced in the trial court in support of the judgment as an appellee, even if those particular arguments were rejected or ignored by the trial court." *Bailey v. Dart Container Corp.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002). In contrast, a cross-appeal is only necessary and appropriate "when a party seeks to enlarge its own rights under the judgment or to lessen the rights of its adversary under the judgment." *Id.* A cross-appeal was not only unnecessary under the facts of this case, but would have been improper. Because the government does not seek to enlarge its rights or lessen Thetford IV's rights, the appropriate treatment of these arguments was to consider them as alternative bases for affirmance, as the government did here.

Because we reverse the Court of Federal Claims' determination that Thetford IV was collaterally estopped from bringing this claim, we must address these alternative bases. The government argues that the Court of Federal Claims erred in determining that the claims related to Chowan Court Apartments, Columbus Court Apartments, and Peachtree Court Apartments (Limitation Properties) were timely. The government argues that the Court of Federal Claims erred in finding that the claims related to Southgate Apartments, Jefferson Court Apartments, Glendale Court Apartments, Market North Apartments #1, Chowan Court Apartments, Columbus Court Apartments, and Peachtree Court Apartments (Algorithmic Properties) were ripe.

"A determination of the Court of Federal Claims jurisdiction presents a question of law that we review de

novo." *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000). We review the Court of Federal Claims' findings of fact relating to jurisdictional issues for clear error. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1353 (Fed. Cir. 2006).

### A. Limitations Properties

Claims over which the Court of Federal Claims has jurisdiction must be filed "within six years after such claim first accrues." 28 U.S.C. § 2501. An amendment to a pleading relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." R. CT. FED. CL. 15(c)(1)(B). The Court of Federal Claims allowed Thetford IV to amend its complaint to add the Limitation Properties to the case during discovery, but more than 6 years after repeal of the Preservation Statutes. The court found that the injury arising from properties listed in the original complaint and the amended complaint were the same— enactment of LIHPRHA with its prohibition on prepayment. Thus, it found that the claims for the properties listed in the original complaint and the Limitation Properties arose out of the same conduct, transaction, or occurrence.

The government contends that the takings claims regarding the Limitation Properties are time-barred because each Limitation Property is distinct from those in the original complaint. Specifically, it argues that because the Limitation Properties were developed at different times, built in different areas, and funded by different mortgages, they are not part of the same conduct, transaction, or occurrence as the properties listed in the original complaint.

We hold that the Court of Federal Claims did not err in allowing Thetford IV to amend its complaint. The alleged injury, taking of the contractual right to prepay,

arose from enactment of LIHPRHA, which prohibited prepayment and limited HUD's discretion to permit prepayment. As such, the claim, taking of the contractual right to prepay the mortgages of the Limitation Properties, arose out of the same conduct, transaction or occurrence as the properties listed in the original complaint. Additionally, the government was on notice that Thetford IV was raising takings claims for their properties based on enactment of LIHPRHA. Thetford IV simply added specificity to its complaint by adding the Limitations Properties, not wholly new claims. We thus affirm the Court of Federal Claims' decision to permit Thetford IV to amend its complaint to add claims related to the Limitation Properties.

## B. Algorithmic Properties

In *Cienega Gardens*, this court held that HUD lacks discretion to grant a prepayment request unless (1) implementation of the plan will not materially increase economic hardship for current tenants; and (2) the supply of vacant, comparable housing is sufficient to ensure that prepayment will not materially affect the availability of decent, safe, and sanitary housing affordable to low-income persons in the area. *Cienega Gardens v. United States*, 265 F.3d 1237, 1246 (Fed. Cir. 2001). These limitations on HUD's discretion spring directly from 12 U.S.C. § 4108. Further, in *Cienega Gardens* we held that the model plaintiffs established futility by presenting property-specific evidence related to the economic hardship and effect of supply of low-income housing in the relevant communities. 265 F.3d at 1246–47. They presented property-specific evidence that HUD would not have been able to approve prepayment of these mortgages pursuant to its limited discretion under § 4108. *Id.* This included determining the affordable and market rate rents for each of the properties. *Id.* at 1242. Allowing the model plaintiffs to terminate affordability restrictions and charge market rents would have caused the monthly rent

of those tenants to increase by more than 10%. *Id.* at 1243. We remanded, instructing the trial court to determine under the applicable facts whether each of the other plaintiffs could similarly establish futility. *Id.* at 1249.

In this case, the parties filed cross-motions for summary judgment of ripeness. It is undisputed that Thetford IV did not exhaust its administrative remedies, namely it did not obtain a final refusal from HUD through the administrative process before proceeding to bring this action. Thetford IV argued that it would have been futile for it to await a decision from HUD because HUD did not have the discretion to grant pre-payment under § 4108. The Court of Federal Claims granted Thetford IV's motion holding that there was no genuine issue of material fact that it would have been futile for Thetford IV to pursue pre-payment through HUD; therefore, the claims were ripe for the Algorithmic Properties. Correspondingly, it denied the government's summary judgment motion on the same ground.

On appeal, the government argues that the Court of Federal Claims incorrectly decided that the takings claims related to the Algorithmic Properties were ripe. It argues that prepayment could have been approved by HUD if a plan was presented which did not terminate the affordability restrictions. The government, quoting its declarations from Messrs. East and Barry, explains that approval could have been given to a plan to prepay from a property owner like Thetford IV:

> If an owner's plan of action proposed to prepay the mortgage pursuant to the Preservation Statutes, but did not seek to terminate low-income affordability restrictions in the original regulatory agreement, the plan of action would have been approved by HUD. This is because the plan of action would have no effect upon current tenants or the supply of low-income housing and would

therefore have satisfied the statutory criteria for prepayment.

Br. of Appellee in No. 2013-5136 at 54.

This, however, is not what Thetford IV was seeking. Thetford IV sought to prepay its mortgages and terminate the affordability restrictions. Thetford IV J.A. 973. Terminating these restrictions would allow it to realize the appreciation of its property values. *Id.* Thus, the question is whether HUD could have allowed Thetford IV to prepay and terminate restrictions, in light of the limitations presented in § 4108. The government's arguments and evidence about potential approval under factual scenarios that differ from Thetford IV do not create a genuine issue of fact. We likewise reject the government's argument that a plan must be submitted or that an application for prepayment would have to be filed with HUD before a futility analysis can be undertaken. In circumstances, like here, where the property owner demonstrates, and the government fails to refute, that HUD could not have approved prepayment consistent with the limitation of § 4108, futility is established.

The government challenges on appeal the Court of Federal Claims' reliance on Mr. Smith's expert opinion, data, and calculations as establishing futility. As before the trial court, here, the government's arguments miss the mark. Mr. Smith's opinion contained property-specific data and analysis of the impact on current tenants as well as supply of low income housing in the relevant communities. Mr. Smith's first algorithmic test evaluated whether a property was located in an affordable area. If the fair market rent exceeded 15% of the median income for an area, Mr. Smith determined that the property was not located in an affordable area. He opined that if a property was not located in an affordable area, it could not satisfy the Preservation Statutes' requirements for prepayment. His second algorithmic test evaluated whether a property

was located in a market in which there was an excess of supply over demand. For this, he compared market rents in a given area with regulated affordable rents. Mr. Smith opined that the divergence between market and affordable rents demonstrated that that market lacked sufficient supply of affordable properties. Thus, he determined that demand exceeded supply in a market if the difference between market and affordable rents was greater than 10%. He opined that if a property were located in an area in which demand exceeded supply, an owner would be unable to obtain HUD's approval to prepay the mortgage and terminate the affordability restrictions of that property. Mr. Smith's report analyzed each of the Algorithmic Properties, performed calculations for each, and opined that they were payment ineligible pursuant to the criteria of § 4108.

As the Court of Federal Claims found, Mr. Smith's data was "strikingly akin" to the data found sufficient in *Cienega Gardens*. *Anaheim Gardens v. United States*, 109 Fed. Cl. 33, 35 (Fed. Cl. 2013). The government argues that Mr. Smith's first test is invalid because HUD did not use the affordable areas test to evaluate plans. The government witnesses testified only that an affordable areas list was not used and that projects located in metropolitan areas that were not on the affordable areas list "remained potential candidates for prepayment." Thetford IV J.A. 1073, 1078. The relevant question is not whether HUD used this test, but whether utilizing this data demonstrated that the properties did not meet the conditions for prepayment eligibility. The government provided no evidence that established that this data and analysis was flawed. The government's claim that a property not in an affordable area might nonetheless be a candidate for prepayment does not raise a genuine dispute of material fact. Again the government provides no specific evidence, data, or explanation of the criteria under which such a property might still be approved.

Messrs. Barry and East explained that plans could be approved if an owner's plan "did not seek to terminate low-income affordability restrictions in the original regulatory agreement." Thetford IV J.A. 1018, 1023. Again this is not what Thetford IV sought. It is undisputed that Thetford IV sought to remove the affordability restrictions. Thus general statements about approval in circumstances unlike the ones at issue in this case do not create a genuine issue of fact regarding the propriety of Mr. Smith's data, methodology or opinion.

The government challenges to Mr. Smith's second test are likewise flawed. We agree with the Court of Federal Claims that "[i]t is less important whether the [Windfall Profits Test] was intended as a test for financial incentives rather than for prepayment approval, than whether the calculations themselves that Mr. Smith employed in the course of utilizing the WPT demonstrated that the properties did not meet the conditions for prepayment under the criteria of the Preservation Statutes." *Anaheim Gardens v. United States*, 109 Fed. Cl. 33, 37 (Fed. Cl. 2013). The government complains that Mr. Smith disregarded nine of the ten factors in HUD guidance regarding a "soft" market. The government does not refute the reliability of Mr. Smith's test, which determined supply did not exceed demand if market rents are greater than affordable rents by ten percent.

Finally, we made clear in *Cienega Gardens* that whether it would be futile for a property owner to seek prepayment approval must be determined on the basis of facts and calculations specific to each property. 265 F.3d at 1248. Yet in this case, the government failed to provide any specific data or calculations related to the Algorithmic Properties and the requirements of § 4108. The government made only generalized assertions that prepayment was possible for properties in general, but its argument was not tied to any of the Algorithmic Properties or the factual circumstances of those properties. The

government's argument and declarations fail to address whether Thetford IV could prepay in the circumstances presented. We agree with the Court of Federal Claims that, in these circumstances, summary judgment of ripeness was properly granted.

## CONCLUSION

We affirm the Court of Federal Claim's grants of summary judgment as to the Ripeness Properties and Prepayment Properties. We reverse the Court of Federal Claim's decision to dismiss the Thetford IV claims regarding the Limitations and Algorithmic Properties. We remand for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

## COSTS

Each party shall bear their own costs.