NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**STENSON FEARS, JR.,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1633

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-2345, Judge Michael P. Allen, Judge Joseph L. Toth, Senior Judge Mary J. Schoelen.

---

Decided:  January 11, 2021

---

BRIAN KEITH LEWIS, Francis White Law, PLLC, Woodbury, MN, for claimant-appellant.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by JEFFREY B. CLARK, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.; SAMANTHA ANN

SYVERSON, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before DYK, REYNA, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Stenson Fears, Jr., submitted a claim for disability benefits based on hepatitis B, alleging that the disease was connected to his service in the United States Navy. The Department of Veterans Affairs ordered, and Mr. Fears received, a medical examination from Dr. Gary Wilhelm. Dr. Wilhelm opined that Mr. Fears's hepatitis B was less likely than not connected to his Navy service. Relying on Dr. Wilhelm's opinion, the Board of Veterans' Appeals denied Mr. Fears's claim for benefits. Mr. Fears appealed to the Court of Appeals for Veterans Claims (Veterans Court), arguing that Dr. Wilhelm was not competent to opine on the cause of Mr. Fears's hepatitis B. The Veterans Court affirmed the Board's denial of Mr. Fears's benefits claim because Mr. Fears had not timely challenged Dr. Wilhelm's competency. We affirm.

I

A

Mr. Fears served in the U.S. Navy from February 1976 to January 1980. During his service, there was a hepatitis outbreak at his base. Because of his possible exposure, Mr. Fears received an injection of gamma globulin, meant to help him avoid getting hepatitis. In August 1976, Mr. Fears was examined and was tested for hepatitis B. He had no symptoms of hepatitis B, and his test results showed no residual hepatitis B.

In December 2009, Mr. Fears submitted a claim for benefits based on hepatitis, bilateral hearing loss, tinnitus, and a bilateral shin condition, which he alleged was

connected to his Navy service.  Only the claim for benefits based on hepatitis B is relevant on appeal.

In January 2011, Mr. Fears received a VA medical examination, and the examiner diagnosed him with hepatitis B but concluded that a connection to Mr. Fears's Navy service was less than 50% likely.  In May 2014, the Board found the January 2011 medical opinion "inadequate" because the rationale for finding service connection unlikely was "ambiguous."  J.A. 53.  The Board accordingly remanded Mr. Fears's case for a new medical opinion "by an appropriate examiner (preferably a hepatologist)" to "clarify the etiology of the Veteran's currently diagnosed hepatitis B."  J.A. 54.

In July 2014, Mr. Fears received a new medical examination from Dr. Wilhelm, who was not a hepatologist.  He opined that "[t]he etiology of the Veteran's currently diagnosed [h]epatitis B is most likely due to his documented post-service drug use from 1986 to 1991."  J.A. 45.  Relying on a journal article, Dr. Wilhelm stated that "[d]rug use is a major risk factor for hepatitis B (HBV) virus transmission" and explained how Mr. Fears's post-service drug use was more likely the cause of his hepatitis B than other risky activity.  J.A. 45.  At bottom, Dr. Wilhelm concluded that Mr. Fears's hepatitis B "is less likely than not related to his military service."  J.A. 45.

The next month, more service-treatment records were added to Mr. Fears's file.  J.A. 26.  After considering those records, Dr. Wilhelm provided an addendum opinion in December 2014.  He maintained the same conclusion while explaining how the records supported that conclusion.  J.A. 30 ("It confirms that the Veteran was asymptomatic at the time of the exam in August 1976.  If he were ill with hepatitis B, he would be expected to show symptoms.  The findings at the time of the blood donation, likely occurred due to the gamma globulin shot given as prophylaxis to avoid getting hepatitis when he was in San Diego as a recruit.

He had a normal abdominal exam without pain o[r] palpation of his liver, and his liver was of normal size.  The impression of 'hepatitis by history' refers to the statements by the Veteran and not a formal diagnosis of hepatitis.  Review of STRs does not provide documentation to corroborate this claim.").

On April 6, 2017, the Board denied Mr. Fears's claim for benefits.  J.A. 32.  The Board relied on Dr. Wilhelm's July 2014 and December 2014 medical opinions, finding them "adequate and highly probative."  J.A. 30.  The Board also found that the regional office had "substantially complied" with its May 2014 remand order that required "an appropriate examiner (preferably a hepatologist)" provide a new medical opinion—even though Dr. Wilhelm was not a hepatologist—because Dr. Wilhelm was "a physician with a Master of Public Health degree."  J.A. 26, 30, 54.

B

Mr. Fears appealed to the Veterans Court, where, for the first time, he challenged the competency of Dr. Wilhelm.  The Veterans Court rejected that challenge and affirmed the Board's decision.  *Fears v. Wilkie*, 31 Vet. App. 308, 310–11 (2019).  It started from the premise that Federal Circuit precedent generally "requires veterans to object to an examiner's qualifications" at the Board.  *Id.* at 318.  Because Mr. Fears did not raise the competency issue at the Board, the court emphasized that Mr. Fears could prevail "only if" his case came within the exception (to the general rule) identified in *Wise v. Shinseki*, 26 Vet. App. 517 (2014).  *Fears*, 31 Vet. App. at 319.  The "*Wise* exception" to the rule requiring the veteran to challenge competency before the Board, the Veterans Court stated, applies when the record before the Board itself sufficiently suggests a competency problem because that record "independently demonstrate[s] an irregularity in the process of selecting the examiner."  *Id.* (internal quotation marks

omitted); *see also id.* at 318 ("[T]he Board cannot ignore facially obvious issues of competence.").

The record in Mr. Fears's case was not such a record. For his *Wise* exception argument, Mr. Fears relied entirely on a past lawsuit and certain news articles involving Dr. Wilhelm that he raised in his briefing to the Veterans Court. But the Veterans Court—while seeming first to conclude on the merits that these materials did not come within the *Wise* exception, *id.* at 318 (stating that these materials "are not close enough" to come within the *Wise* exception)—ruled that it could not reach the question whether these materials would excuse Mr. Fears's failure to raise competency to the Board because the materials were not part of the record. *Id.* Stating that Mr. Fears made "no argument about why these documents could constructively be considered a part of the administrative record," *id.*, the Board ruled that the documents "were neither actually nor constructively before the Board," *id.* at 319. Although VA had "recognized at oral argument" that "if [Mr. Fears] had properly submitted these documents to the Board, the Board likely would have been required to discuss them, even if [Mr. Fears] had not expressly raised the argument," the Veterans Court concluded that, because the documents on which Mr. Fears relied were not part of the "record on appeal," Mr. Fears's competency argument "ha[d] no merit." *Id.* at 318–19.

Mr. Fears timely appealed. We have jurisdiction to consider legal issues raised by the Veterans Court's decision. *See* 38 U.S.C. § 7292(d)(1). In a case like this, not involving a constitutional issue, we lack jurisdiction to review "a challenge to a factual determination" or "a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2).

## II

Mr. Fears challenges the Veterans Court's determinations involving Dr. Wilhelm's competency. We recently

confirmed the existence of a general requirement that, to challenge a VA medical examiner's competency, the veteran must raise the issue before the Board. *Francway v. Wilkie*, 940 F.3d 1304 (Fed. Cir. 2019). We noted, without addressing, the Veterans Court's recognition in *Wise* of an exception to the general requirement when "the record independently demonstrates an irregularity in the process of selecting the examiner." *Id.* at 1308 n.2. Here, the Veterans Court described the *Wise* exception as applying "where there are facially obvious issues of competence," *Fears*, 31 Vet. App. at 316, a statement that VA does not dispute.

Mr. Fears makes essentially two arguments in his opening brief for why his competency challenge was timely. Mr. Fears's first argument, the only one directed to the "record on appeal" ruling of the Veterans Court, depends on Mr. Fears's desire to invoke issue preclusion (collateral estoppel). Mr. Fears's second argument seeks an exception from timely-presentation requirements for veterans who were not represented by an attorney before the Board. We decline to disturb the Veterans Court's judgment on either ground.

A

Mr. Fears argues that as a matter of law he was entitled to have the Veterans Court consider his newly raised challenge to competency based on issue preclusion, stressing that issue preclusion is a legal issue. *See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1371 (Fed. Cir. 2013) (noting that issue preclusion is a legal question). But we need not decide when, if ever, the Veterans Court would be obliged to entertain an issue-preclusion argument concerning competency when no competency issue had previously been raised (and the earlier adjudication took place long before the Board proceedings). Here, the issue-preclusion contention is patently meritless as a matter of law. In these circumstances, even if the Veterans Court committed an error in declining to consider issue

preclusion (which we do not decide or suggest), the error is harmless, so Mr. Fears could not benefit from our deciding that the Veterans Court should have decided issue preclusion. *See Menegassi v. Shinseki*, 638 F.3d 1379, 1383 (Fed. Cir. 2011) (explaining that this court may decide harmlessness of any Veterans Court error if harmlessness involves only a legal determination); *Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 118 (Fed. Cir. 2013).[1]

A basic requirement of issue preclusion is that the issue decided in the earlier action must be the same as the issue in the later action. *Biafora v. United States*, 773 F.3d 1326, 1333 (Fed. Cir. 2014). That requirement is not met here. The prior litigation, which involved the Army's termination of Dr. Wilhelm's participation in a residency program for orthopedic medicine in 1996, *Wilhelm v. Caldera*, 90 F. Supp. 2d 3 (D.D.C. 2000), *aff'd*, 6 F. App'x 3 (D.C. Cir. 2001) (affirming "essentially for the reasons stated in the district court's memorandum opinion"), did not involve the same issue as whether Dr. Wilhelm was competent, almost two decades later, to opine on the cause of Mr. Fears's hepatitis B.

---

[1]   The Veterans Court ruled that it could not consider the materials from Dr. Wilhelm's prior legal action, or the articles that Mr. Fears submitted to that court (but does not invoke in this court), because they were not part of the "record on appeal." *Fears*, 31 Vet. App. at 318. Mr. Fears's opening brief challenged that conclusion based only on his contention that he was entitled to argue issue preclusion. *See* Fears Opening Br. at 3, 11–23. To the extent that Mr. Fears's reply brief makes an argument about the record on appeal not tied to issue preclusion, which is unclear, the argument is too late. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

In *B & B Hardware, Inc. v. Hargis Industries, Inc.*, the Supreme Court endorsed the principle that "'[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.'" 575 U.S. 138, 154 (2015) (quoting 18 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4417, 449 (2d ed. 2002)). Although "[m]inor variations in the application of what is in essence the same legal standard do not defeat preclusion," when the analysis is "significantly different," the issues are different. *Smith v. Bayer Corp.*, 564 U.S. 299, 312 n.9 (2011) (internal quotation marks and citation omitted). That is so here.

*Wilhelm v. Caldera*, a case filed in 1998, involved Dr. Wilhelm's "action for declaratory judgment . . . to overturn the Secretary of the Army's [Louis B. Caldera's] decision [in 1996] to terminate [Dr. Wilhelm] from his graduate medical training as an orthopedic surgery resident." 90 F. Supp. 2d at 5. Specifically, Dr. Wilhelm made two claims under the Administrative Procedure Act: (1) "the decision to terminate him from his graduate medical training was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law and military regulation"; and (2) he had a "due process right to practice medicine in the U.S. Army." *Id.* The district court granted Secretary Caldera's motion for summary judgment rejecting Dr. Wilhelm's claims. *Id.* at 9.

As to the first claim, the court explained that its review was "limited to determining whether there has been substantial compliance with statutes and regulations, whether the agency acted arbitrarily and capriciously, and whether there is substantial evidence to support the agency's decision." *Id.* at 7. Under that standard of review, the court held that Dr. Wilhelm's residency termination passed muster because the relevant regulations permitted the Army to "terminate a trainee for failure to correct necessary deficiencies while on probation" and because "[t]he records

show[] numerous poor performance evaluations and reports from faculty that [Dr. Wilhelm] was not 'making significant improvement' during his initial probation period of six months." *Id.* at 7–8. As to the second (due-process) claim, the court concluded that Dr. Wilhelm "ha[d] no due process right to practice medicine in the U.S. Army" and "suffered no loss of property because there is no protected property interest in continued military service." *Id.* at 8–9.

By contrast, the issue now raised by Mr. Fears, for which he seeks preclusion, is whether Dr. Wilhelm was competent, under 38 C.F.R. § 3.159(a)(1), to opine in 2014 on the cause of Mr. Fears's hepatitis B. That regulation states in relevant part: "Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions." Determining whether Dr. Wilhelm in 2014 was "qualified through education, training, or experience to offer medical diagnoses, statements, or opinions" on the cause of hepatitis B is significantly different from determining whether, eighteen years earlier, the Army could properly find deficiencies that supported its termination of Dr. Wilhelm from an orthopedic-medicine program or whether Dr. Wilhelm had a due-process right to continue in the program. The issues are not the same, and for at least that reason, issue preclusion could not apply.[2]

---

[2]  Mr. Fears seeks en banc review of whether issue preclusion (based on an old adjudication) presents a special case for the Veterans Court's restricting its rulings to the record before the Board or excusing failure to raise a competency issue before the Board. *See* Fears Opening Br. at 10, 20–21. Because we reject issue preclusion on the merits, we do not decide the record-scope or timely-presentation questions involving issue preclusion. For that reason

B

Mr. Fears also argues that as a matter of law the general requirement to raise a competency challenge before the Board should not apply to veterans who were pro se or represented by a non-lawyer before the Board. *See* Fears Opening Br. at 23–28. We reject that argument. Although filings in such situations may be liberally and sympathetically read in the course of determining whether an issue has actually been raised, we have rejected similar suggestions to simply excuse compliance with requirements for raising an issue. *See, e.g.*, *Scott v. McDonald*, 789 F.3d 1375, 1381 (Fed. Cir. 2015); *Parks v. Shinseki*, 716 F.3d 581, 585 (Fed. Cir. 2013); *Comer v. Peake*, 552 F.3d 1362, 1368 (Fed. Cir. 2009). We do so again here.

III

Mr. Fears makes other arguments that we cannot address. We generally cannot address an argument not presented to the Veterans Court first. *See Emenaker v. Peake*, 551 F.3d 1332, 1337 (Fed. Cir. 2008) ("In order to present a legal issue in a veteran's appeal, the appellant ordinarily must raise the issue properly before the Veterans Court; with limited exceptions, appellate courts do not consider issues that were not raised in the tribunal from which the appeal is taken, and we have held that those general principles of appellate practice apply in the context of appeals from the Veterans Court."); *see also O'Brien v. Wilkie*, 948 F.3d 1339, 1341 n.2 (Fed. Cir. 2020); *Scott*, 789 F.3d at 1379–80.

Mr. Fears presented no meaningful argument to the Veterans Court that the general requirement that veterans must raise a challenge to a VA medical examiner's competence before the Board "is incompatible with" 38 C.F.R.

and others, we deny what we take to be a request for referral of this case to the full court for en banc hearing.

§ 3.159.  *Compare* Fears Opening Br. at 36–40, *with Fears v. Wilkie*, No. 17-2345 (Vet. App.) (Jan. 10, 2018 opening brief and May 3, 2018 reply brief).  The lack of such an argument—for which even now Mr. Fears presents no support in the language of § 3.159—is reflected in the absence of any interpretation of § 3.159 in the Veterans Court's opinion.  Mr. Fears likewise did not argue that the regional office failed to comply substantially with the Board's remand order because Dr. Wilhelm was not a hepatologist.  Fears Opening Br. at 28–36; Fears Reply Br. at 5.  As the Veterans Court wrote, Mr. Fears "did not raise the issue of Dr. Wilhelm not being a hepatologist.  Thus, we consider that argument waived." *Fears*, 31 Vet. App. at 319 n.102.  Mr. Fears does not contest the Veterans Court's forfeiture determination.  We therefore cannot address either argument on appeal.

## IV

For the foregoing reasons, we affirm the Veterans Court.

The parties shall bear their own costs.

## AFFIRMED