# United States Court of Appeals for the Federal Circuit

---

**LEWIS B. JONES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-2298

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00520-MMS, Judge Margaret M. Sweeney.

---

Decided: August 11, 2021

---

LEWIS JONES, Kansas City, MO, pro se.

JAMES WILLIAM POIRIER, I, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., FRANKLIN E. WHITE.

---

Before NEWMAN, SCHALL, and DYK, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* SCHALL.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

SCHALL, *Circuit Judge*.

Lewis B. Jones appeals the decision of the United States Court of Federal Claims that dismissed his amended complaint for lack of jurisdiction. *Jones v. United States*, 149 Fed. Cl. 703 (2020) ("*Jones*"). The Court of Federal Claims dismissed the amended complaint on the grounds that the claims stated therein were barred by the six-year statute of limitations set forth at 28 U.S.C. § 2501. For the reasons stated below, we affirm.

BACKGROUND

I.

The pertinent facts are not in dispute. Mr. Jones entered active-duty service in the United States Air Force ("Air Force") on January 29, 1981. *Jones*, 149 Fed. Cl. at 705. Subsequently, in 1982, while serving in Germany, he was struck in the eye by the door of an armored personnel carrier. *Id.* As his service continued, this injury resulted in a number of sequelae, including intense headaches. *Id.* In addition, over time, as a result of the injury, it became increasingly difficult for Mr. Jones to perform his duties. *See id.*

In October of 1988, Mr. Jones was referred to a Medical Evaluation Board ("MEB"). A "Narrative Summary (Clinical Resume)" dated October 16, 1988, that was before the MEB reflects that Mr. Jones had developed "intermittent right cranial nerve 4th palsy associated with chronic right retro-orbital stabbing pain, usually occurring during the late afternoon or night." Suppl. App. 24. According to the summary, a psychiatric consultant felt that Mr. Jones suffered from psychological factors effecting a physical illness and had recommended psychometric testing. *Id.* at 25. The summary also states that Mr. Jones had previously experienced headaches "three to four times a year" lasting "one to three days." *Id.* at 24. The summary further states that, in the three months prior to the MEB proceedings, Mr.

Jones "noted increasing frequency and duration of headaches (up to two to three times a day[ ]")", and that "[i]n the last two weeks, he noted a nearly constant headache which was relieved only with repetitive doses of intramuscular Demoral." *Id.* On November 18, 1988, the MEB issued a report referring Mr. Jones's case to a Physical Evaluation Board ("PEB"), to consider whether Mr. Jones's medical condition rendered him physically unfit to serve in the Air Force. *See Jones*, 149 Fed. Cl. at 705–06 & n.2. Mr. Jones provided remarks on the "Statement of Record Data," in which he stated that his condition had "worsened even more since the M.E.B. evaluation." Suppl. App. 28–29. He indicated that he had "constant temporal and eye pain which varie[d] in severity several times a day that [was] incapacitating." Suppl. App. 28. He expressed that "[p]sychologically," he felt "deformed, miserable" and possessed "zero tolerance to stress." *Id.* He remarked that, "[i]n the event of retirement," his injury would "positively hinder civilian employment." *Id.* In a report dated December 6, 1988, the PEB recommended that Mr. Jones be discharged with severance pay based on a 10% disability rating for "Post traumatic pain syndrome manifest[ing] as headaches." *Jones*, 149 Fed. Cl. at 706.

On December 29, 1988, Mr. Jones was honorably discharged from the Air Force with severance pay. In 1989, his discharge was amended to reflect the fact that his injury was combat-related. *Id.*

In due course, Mr. Jones sought disability benefits from the Department of Veterans Affairs ("VA"). As a result, over a period of fifteen years, the VA issued various disability ratings or denials of disability claims in response to claims brought by Mr. Jones. *Id.* Eventually, effective December 8, 2017, the VA awarded Mr. Jones a 100% disability rating. *Id.*

Upon receiving this 100% disability rating from the VA, on February 26, 2018, Mr. Jones petitioned the Air

Force Board for Correction of Military Records ("AFBCMR") for changes to his record that would entitle him to a disability retirement dating back to 1988, when he was discharged. *Id.* Before the AFBCMR, Mr. Jones also sought disability retirement pay and benefits pursuant to 10 U.S.C. § 1201. In January of 2020, the AFBCMR denied Mr. Jones's petition. *Id.*

## II.

On April 23, 2020, Mr. Jones filed a complaint in the Court of Federal Claims seeking review of the AFBCMR decision. Thereafter, on July 1, 2020, he filed an amended complaint. *Jones*, 149 Fed. Cl. at 706.

On August 25, 2020, the Court of Federal Claims granted the government's motion to dismiss pursuant to its Rule 12(b)(1). Although the court determined that Mr. Jones's claim for disability retirement pay and benefits pursuant to 10 U.S.C. § 1201 was a claim under a money-mandating statute, as required by the Tucker Act, 28 U.S.C. § 1491(a)(1), and thus within the scope of its jurisdiction, it concluded that it lacked jurisdiction because the claim was barred by the statute of limitations. *Id.* at 707–08.

To fall within the jurisdiction of the Court of Federal Claims, a claim against the United States filed in that court must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501; *see also John R. Sand & Gravel Co. v United States*, 552 U.S. 130, 132–35 (2008). "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue . . . for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)).

The Court of Federal Claims determined that Mr. Jones's claim for disability retirement pay and benefits accrued on December 29, 1988, the date of his discharge from the Air Force. *Jones*, 149 Fed. Cl. at 708. As noted above, Mr. Jones's discharge followed the determination of the PEB earlier in December that Mr. Jones should be separated, and not retired, due to his disabling trauma manifesting as headaches. Having determined that Mr. Jones's claim accrued upon his discharge, the court ruled that it was time-barred. The court stated:

> [b]ecause Mr. Jones did not file suit in this court within six years of his separation from the Air Force in 1988, but instead filed suit more than thirty years later, his claim for disability retirement pay and benefits is barred by 28 U.S.C. § 2501.

*Id.* In reaching this conclusion, the court ruled that Mr. Jones could not rely on the accrual suspension rule, under which "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Id.* at 709 (quoting *Martinez*, 333 F.3d at 1319). According to the court, the "amended complaint establishe[d] a record of Mr. Jones's knowledge of his various health conditions in the months leading up to his discharge," and thus "[t]he facts of this case do not show that Mr. Jones's disabling health problems were inherently unknowable in 1988." *Id.* at 709.

Based upon these findings, the court granted the government's motion to dismiss and directed the entry of judgment accordingly. Following the entry of judgment, Mr. Jones timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I.

Whether the Court of Federal Claims has jurisdiction over a claim is a question of law that we review de novo. *Biafora v. United States*, 773 F.3d 1326, 1334 (Fed. Cir. 2014). We review the court's findings of fact relating to jurisdictional issues for clear error. *Id.*

II.

The Court of Federal Claims did not err in ruling that Mr. Jones's claim accrued upon the date of his discharge and therefore was barred by the six-year statute of limitations set forth at 28 U.S.C. § 2501.

> The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it. The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event. If at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge. A subsequent petition to the corrections board does not toll the running of the limitations period; nor does a new claim accrue upon denial of the petition by the corrections board.

*Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citing *Friedman v. United States*, 310 F.2d 381, 390, 396–98 (Ct. Cl. 1962)); *accord Chambers v. United States*, 417 F.3d 1218, 1221, 1224–25, 1227 (Fed. Cir. 2005); *Martinez*, 333 F.3d at 1311–15.

Moreover, as the Court of Federal Claims noted, statutorily authorized military boards whose decisions are

sufficient to trigger the running of the six-year limitations period include PEBs. *Chambers*, 417 F.3d at 1225 & n.2; *Schmidt v. United States*, 89 Fed. Cl. 111, 120 (2009) ("An 'informal' [Central Physical Evaluation Board] decision is sufficient to start the running of the statute of limitations.").

## III.

On appeal, Mr. Jones devotes the bulk of his brief to the argument that the Court of Federal Claims erred when it held the accrual suspension rule does not apply to his claim. According to Mr. Jones, the PEB's discharge decision in 1988 was founded solely on his headaches (post-traumatic pain syndrome), whereas he was later diagnosed with traumatic brain injury ("TBI") and Post-Traumatic Stress Disorder ("PTSD"). *See, e.g.*, Appellant's Informal Br. 12, 13, 16, 17. He contends that because the MEB and PEB could not have articulated his health problems to be TBI and PTSD, they were "unknowable" at the time of his discharge. Thus, Mr. Jones argues, his claim for retirement benefits did not accrue until he was diagnosed with TBI and PTSD in 2017. *Id.* at 10–12.

To take advantage of the accrual suspension rule, a plaintiff must either show that the "defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Martinez*, 333 F.3d at 1319 (quoting *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985)). The accrual suspension rule is "strictly and narrowly applied." *Id.* (quoting *Welcker*, 752 F.2d at 1580). As the government points out, the record makes it clear that, in 1988, Mr. Jones knew that he had been injured, knew that he suffered physical and psychological symptoms as a result of his injury, knew that these symptoms had an impact upon his ability to work, and knew that the PEB had considered his symptoms and his ability to work, and had rated him only 10% disabled.

Appellee's Br. 19–20; Suppl. App. 24–29. Moreover, the Court of Federal Claims explained why Mr. Jones's claim was not inherently unknowable for these reasons. *See Jones*, 149 Fed. Cl. at 709–10 ("In this case, the record shows that Mr. Jones recognized the disabling nature of his health problems in 1988; thus, his claim accrued in 1988 when he was discharged with severance pay rather than with disability retirement pay and benefits."). The court explained that Mr. Jones may not have had a full understanding of all of his health problems in 1988, but his disability retirement claim was not inherently unknowable in 1988. *Id.* at 709. Thus, even though Mr. Jones had not been diagnosed as having TBI or PTSD, he was aware of the "incapacitating" nature of his injury and believed that it would "positively hinder" his future employment. Suppl. App. 28. Accordingly, he had an understanding of the seriousness of his condition that was sufficient to justify a conclusion that he could have sought earlier redress. *See Real*, 906 F.2d at 1561–62; *see also Young v. United States*, 529 F.3d 1380, 1385 (Fed. Cir. 2008) ("It is a plaintiff's knowledge of the facts of the claim that determines the accrual date.") (first citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979), then citing *Catawba Indian Tribe v. United States*, 982 F.2d 1564, 1572 (Fed. Cir. 1993)). The accrual suspension rule therefore does not apply.

## IV.

We have considered Mr. Jones's additional arguments and have found them all to be without merit.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims dismissing Mr. Jones's amended complaint for lack of jurisdiction.

## **AFFIRMED**

JONES v. US                                                          9

COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**LEWIS B. JONES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-2298

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00520-MMS, Judge Margaret M. Sweeney.

---

NEWMAN, *Circuit Judge*, dissenting.

When Lewis B. Jones was honorably discharged from the United States Air Force in 1988 because of an eye injury, he received severance pay and a 10% disability rating. He was not granted disability retirement, which requires a disability rating of at least 30%. Thus, even if the six-year Tucker Act statute of limitations were to apply to review of actions of correction boards, a limitations bar cannot accrue before the action could have been brought. From the court's dismissal of this appeal on limitations grounds, I respectfully dissent.

The Court of Federal Claims, and now the Federal Circuit, hold that this action is subject to a six-year period of limitations accruing from the date of Mr. Jones' 1988 discharge with 10% disability, but since disability retirement

requires at least 30% disability (or 20 years of service, not here applicable), Mr. Jones was not entitled to disability retirement in 1988.    As provided in 10 U.S.C. § 1201(b)(3)(B), to be eligible for disability retirement "the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination."

Air Force Instruction 36-3212 Physical Evaluation for Retention, Retirement and Separation (15 July 2019) provides:

> **¶ 3.13. Determining Compensable Disabilities**.  Eligibility for referral to the DES for fitness determinations does not automatically confer retirement or separation benefits to the service member.  A service member determined unfit to perform the duties of his or her office, grade, rank, or rating because of disability may be eligible for disability compensation.  The PEB determines compensability in accordance with DoDI 1332.18, Appendix 3 to Enclosure 3.

> \* \* \*

> **¶ 3.17. Recommended Disposition**.  Upon review and evaluation of a disability case, the PEB recommends one of the following dispositions.  (See Table 3.1 for a recommended disposition decision rules):

> \* \* \*

> 3.17.2. Permanent Disability Retirement. Applies to service members who have been found unfit, the condition is stable and permanent, and the total disability rating is 30 percent or greater or the service member has 20 years or more service computed under 10 U.S.C. § 1208 regardless of the combined compensable disability rating.

The question on this appeal is not whether Mr. Jones is entitled to the award of retroactive disability retirement pay, for the Court of Federal Claims did not decide the merits of Mr. Jones' action. The question before us is whether this suit is barred by the Tucker Act six-year statute of limitations.

The Court of Federal Claims accepted the government's position that Mr. Jones' claim became barred six years after his 1988 discharge, although his 10% disability rating was not entitled to disability retirement. That is not correct application of limitations law. *See Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'") (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)). "'Accrue' is '[t]o come into existence as an enforceable claim or right.'" *Shoshone Indian Tribe of Wind River Reserve, Wyo. v. United States*, 51 Fed. Cl. 60, 67, n.8 (2001) (quoting Black's Law Dictionary 21 (7th ed. 1999)).

The Court of Federal Claims reports that Mr. Jones was rated 50% disabled in 2005 and 100% disabled in 2017. *Jones v. United States*, 149 Fed. Cl. 703, 706 (2020). After Mr. Jones was rated 100% disabled, he requested the Air Force Board for Correction of Military Records ("AFBCMR") to correct his 1988 discharge to establish entitlement to disability retirement from the date of discharge. The Court of Federal Claims, stating that "Mr. Jones now seeks review of the AFBCMR's decision," held that the requested action was barred by the Tucker Act statute of limitations. *Id.* at 706, 710.

This holding violates limitations principles, for a Tucker Act suit cannot be brought until "all events have

occurred that are necessary to enable the plaintiff to bring suit." *Martinez*, 333 F.3d at 1303. Although Mr. Jones had no claim for disability retirement with a 10% disability rating, my colleagues hold that he could have and should have taken some sort of action in 1988:

> [E]ven though Mr. Jones had not been diagnosed as having TBI or PTSD [at discharge in 1988], he was aware of the "incapacitating" nature of his injury and believed that it would "positively hinder" his future employment. Accordingly, he had an understanding of the seriousness of his condition that was sufficient to justify a conclusion that he could have sought earlier redress.

Maj. Op. at 8 (internal citation omitted). According to the majority, Mr. Jones' symptoms at the time of his discharge were such that he "could have sought earlier redress," *id.*, whereby the majority concludes that the statute of limitations bars suit for redress six years after discharge. However, with only 10% disability, he was not entitled to "earlier redress."

The court errs in holding that the period of limitations accrued from the date of discharge in 1988. The record before us does not explain how Mr. Jones' undiagnosed disabilities qualified him for disability retirement in 1988, and the Court of Federal Claims did not discuss the merits. My concern is with the ruling that although Mr. Jones did not have a legally cognizable claim in 1988, this claim became barred after six years.

The government urges that the statute of limitations was properly applied, stating that "[i]n 1988, Mr. Jones could have filed suit to challenge the disability rating by the Air Force as insufficient, and so could have sought a medical retirement." Gov't Br. 20. The government responds to Mr. Jones' argument that he was not aware of all his ailments in 1988 "and so it was impossible for him to make a claim in 1988," with the response that "it was not

necessary for Mr. Jones to know the term 'PTSD' in order to bring suit. There was no requirement that Mr. Jones give this name (or any name) to his symptoms. Instead, Mr. Jones merely needed to show that he was injured during his military service, and that, as a result, he qualified for a rating of 30 percent disability." *Id.* The government states that Mr. Jones "understood that the symptoms experienced in 1988 would have an impact upon his ability to work," and therefore "accrual of his claim should not be suspended." Gov't Br. 22.

The government also rejects Mr. Jones' alternative arguments of equitable tolling, his reference to Department of Defense guidance documents, and any theory of "legal disability." Govt Br. 24–27.

It is not disputed that Mr. Jones' present 100% disability is a "disability resulting from personal injury suffered or disease contracted in line of duty." 38 U.S.C. § 1110. There is no issue before us concerning this rating; the only issue is the holding that a limitations bar arose six years after his 1988 discharge from service.

No law or policy requires a veteran to apply for or sue for a benefit within a statutory period after he might have become eligible for the benefit. The veterans' laws recognize the possible progression of service-connected disability, and simply hold that any compensation to which the veteran is or becomes entitled is paid only from the date of application, although the evidence of service-connection may span decades. A veteran's claim is not barred if the claim could have been brought more than six years earlier.

Heretofore, a claim for service-connected benefits could be filed at the veteran's choice, although benefits are payable only from the date of filing the claim. Today's holding is a significant change for veterans' claims. I respectfully dissent.